## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **RACHELI COHEN, et al.**, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Case No. 16-04453 (NGG) (LB) |
| | ) | |
| v. | ) | ECF Case |
| | ) | |
| **FACEBOOK, INC**., | ) | Oral Argument Requested |
| | ) | |
| Defendant. | ) | |
| | ) | |
| **STUART FORCE, et al.**, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Case No. 16-05158 (NGG) (LB) |
| | ) | |
| v. | ) | ECF Case |
| | ) | |
| **FACEBOOK, INC**., | ) | Oral Argument Requested |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S COMBINED REPLY
## IN SUPPORT OF MOTIONS TO DISMISS

Shireen A. Barday
Aulden Burcher-DuPont
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
shireen.barday@kirkland.com

Craig S. Primis, P.C.
K. Winn Allen
Jennifer M. Bandy
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
craig.primis@kirkland.com

*Attorneys for Defendant*

January 13, 2017

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

ARGUMENT .................................................................................................................1

I.     The Communications Decency Act Requires Dismissal of Plaintiffs' Claims.................1

     A.     The CDA Applies Equally to ATA Claims. ..........................................................1

     B.     The CDA Applies to Claims Based on the Alleged "Provision of Services." ....2

     C.     The CDA Applies to Israeli Law Claims Brought in American Courts. ..............5

II.     This Court Cannot Exercise Personal Jurisdiction over Facebook. ...................................6

     A.     New York's Long-Arm Statute Does Not Permit Exercise of Specific Jurisdiction over Facebook in These Cases. ........................................................6

     B.     Subjecting Facebook to Jurisdiction Here Would Violate Due Process. ..............7

     C.     Facebook Did Not Consent to Personal Jurisdiction in New York. ....................8

     D.     The ATA's Venue Statute Does Not Justify the Exercise of Personal Jurisdiction in the *Force* Case. ............................................................................8

III.     The *Cohen* Plaintiffs Lack Article III Standing to Bring Their Suit. ...............................9

IV.     The *Force* Plaintiffs Have Failed to State A Claim Under Section 2333.......................11

     A.     Plaintiffs Have Not Plausibly Alleged That Their Injuries Occurred "By Reason Of" Facebook's Activities. ..................................................................11

     B.     Plaintiffs Have Not Plausibly Alleged Secondary Liability Under the ATA.......................................................................................................................12

           1.     Facebook Did Not Aid and Abet HAMAS. ............................................12

           2.     Facebook Did Not Conspire with HAMAS. ...........................................13

     C.     Plaintiffs Also Have Not Plausibly Alleged Direct Liability for an "Act of International Terrorism." ....................................................................................14

CONCLUSION...............................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmad v. Christian Friends of Israeli Communities*,
  No. 13 CIV. 3376 JMF,
  2014 WL 1796322 (S.D.N.Y. May 5, 2014) ........................................................................14

*Allco Fin. Ltd. v. Klee*,
  805 F.3d 89 (2d Cir. 2015) ..............................................................................................10

*Almendarez-Torres v. United States*,
  523 U.S. 224 (1998) ..........................................................................................................8

*Barrett v. Tema Dev. (1988), Inc.*,
  251 F. App'x 698 (2d Cir. 2007) ........................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................13, 14

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007) ...........................................................................................6, 7

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016) ..............................................................................................8

*Carafano v.* Metrosplash.com*, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ...........................................................................................6

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) .....................................................................................................7, 8

*Fields v. Twitter, Inc.*,
  No. 16-CV-00213-WHO,
  2016 WL 4205687 (N.D. Cal. Aug. 10, 2016) ...................................................................5

*Fields v. Twitter, Inc.*,
  No. 16-CV-00213-WHO,
  2016 WL 6822065 (N.D. Cal. Nov. 18, 2016) ...................................................3, 4, 5, 11

*Genuine Parts Co. v. Cepec*,
  137 A.3d 123 (Del. 2016) ...................................................................................................8

*Gill v. Arab Bank, PLC*,
  893 F. Supp. 2d 542 (E.D.N.Y. 2012) ..............................................................................11

*Green v. Am. Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003) .................................................................................... 3

*Greenberg v. Bush*,
    150 F. Supp. 2d 447 (E.D.N.Y. 2001) ............................................................. 10, 11

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ...................................................................... 12, 13, 14

*Hui v. Castaneda*,
    559 U.S. 799 (2010) ................................................................................................ 2

*In re Terrorist Attacks on Sept. 11, 2001*,
    349 F. Supp. 2d 765 (S.D.N.Y. 2005) ..................................................................... 8

*In re Terrorist Attacks on Sept. 11, 2001*,
    538 F.3d 71 (2d Cir. 2008) ...................................................................................... 9

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016) ................................................................................. 2, 3

*King v. City of N.Y.*,
    No. 05 CV 3247 (JG),
    2007 WL 959696 (E.D.N.Y. Mar. 30, 2007) .......................................................... 13

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ............................................................................... 6

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003) .................................................................................... 11

*Linde v. Arab Bank, PLC*,
    384 F. Supp. 2d 571 (E.D.N.Y. 2005) .................................................................... 14

*Linde v. Arab Bank, PLC*,
    Nos. 16-2119, 16-2134, 16-2098 (2d Cir. Oct. 21, 2016) ..................................... 14

*Massachusetts v. E.P.A.*,
    549 U.S. 497 (2007) .............................................................................................. 10

*Morrison* v. *National Australia Bank Ltd.*,
    561 U. S. 247 (2010) ............................................................................................... 6

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
    551 U.S. 644 (2007) ................................................................................................ 2

*Obado v. Magedson*,
   No. CIV. 13-2382 JAP,
   2014 WL 3778261 (D.N.J. July 31, 2014),
   *aff'd*, 612 F. App'x 90 (3d Cir. 2015)................................................................2

*Paroline v. United States*,
   134 S. Ct. 1710 (2014) ........................................................................................11

*Perkins v. Benguet Consol. Min. Co.*,
   342 U.S. 437 (1952).............................................................................................7

*Ricci v. Teamsters Union Local 456*,
   781 F.3d 25 (2d Cir. 2015) ..............................................................................3, 5

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013) .................................................................................10

*Russell v. Marboro Books*,
   18 Misc. 2d 166 (N.Y. Sup. Ct. 1959) ...............................................................12

*Samantar v. Yousuf*,
   560 U.S. 305 (2010).............................................................................................9

*Shiamili v. Real Estate Grp. of N.Y., Inc.*,
   952 N.E.2d 1011 (N.Y. 2011)..............................................................................5

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ........................................................................................10

*Strauss v. Crédit Lyonnais, S.A.*,
   175 F. Supp.3d 3 (E.D.N.Y. 2016) ......................................................................8

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
   478 F.3d 413 (1st Cir. 2007)................................................................................5

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) .........................................................................................7

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) ................................................................................9

*Weiss v. Nat'l Westminster Bank PLC*,
   176 F. Supp. 3d 264 (E.D.N.Y. 2016)............................................................8, 14

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ...............................................................................2

**Rules and Statutes**

18 U.S.C. § 2333 ........................................................................................2, 11

18 U.S.C. § 2334(a) .....................................................................................8, 9

18 U.S.C. § 2334(b) .........................................................................................9

18 U.S.C. § 2334(d) .........................................................................................9

47 U.S.C. § 230 ...........................................................................................2, 5

47 U.S.C. § 230(c)(1) ........................................................................1, 3, 4, 5, 6

47 U.S.C. § 230(e)(1) ........................................................................................2

Fed. R. Civ. P. 4(k)(1)(c) ..................................................................................9

Pub. L. No. 114-222 (2016) .............................................................................12

**Other Authorities**

Keeton et al.,
   *Prosser and Keeton on the Law of Torts* (5th ed. 1984) ...............................3

Wright & Miller,
   Fed. Prac. & Proc. Civ. (4th ed. 2016) .........................................................9

## INTRODUCTION

Plaintiffs' opposition is misdirected.  Rather than address the federal statute that forecloses their claims, plaintiffs argue at length about the merits of those claims.  But the Communications Decency Act, 47 U.S.C. § 230(c)(1), applies to *any* claim that would require this Court to treat Facebook as the publisher of third-party content on its platform, and plaintiffs' claims unquestionably would do so.  The statute and the overwhelming body of precedent interpreting it therefore require dismissal of these complaints.  The remaining problems are simply confirmation of this result: The absence of Article III standing and personal jurisdiction in *Cohen* deprive this Court of authority over that action.  And the radical and factually unsupported theories of liability advanced by the *Force* plaintiffs are both statutorily and constitutionally problematic.  Facebook takes terrorism seriously and is committed to curbing the spread of terrorist content online.  Simply stated, there is no place on Facebook's platform for organizations that are engaged in terrorist activity or for content that expresses support for such activity.  But Facebook is not responsible for the deplorable terrorist acts that form the basis for plaintiffs' claims.

## ARGUMENT

### I.     The Communications Decency Act Requires Dismissal of Plaintiffs' Claims.

Plaintiffs' claims are barred by the CDA.  Plaintiffs cannot evade that statute by pleading their claims under the ATA, under a provision-of-services theory, or under Israeli law.

#### A.     The CDA Applies Equally to ATA Claims.

The *Force* plaintiffs first contend that their *civil* ATA claims fall within the federal criminal law exception to the CDA, Opp. at 26-27 & n.6, but that exception does not apply.  It states that the CDA shall not "be construed to impair the enforcement of section 223 or 231 of [title 47], chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of

title 18, or any other Federal criminal statute." 47 U.S.C. § 230(e)(1). But here, plaintiffs have asserted claims under the ATA's civil remedies provision, 18 U.S.C. § 2333; the criminal-law exception is therefore entirely irrelevant. *See Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 23 (1st Cir. 2016) (rejecting argument that a civil suit under the Trafficking Victims Protection Reauthorization Act fell within the criminal law exception); *Obado v. Magedson*, No. CIV. 13-2382 JAP, 2014 WL 3778261, at *8 (D.N.J. July 31, 2014), *aff'd,* 612 F. App'x 90 (3d Cir. 2015) ("[T]he CDA exception for federal criminal statutes applies to government prosecutions, not to civil private rights of action under stat[utes] with criminal aspects.") [1]

### B. The CDA Applies to Claims Based on the Alleged "Provision of Services."

The *Force* plaintiffs next contend that their ATA claims[2] are based on the "provision of services, not 'objectionable content'" and thus fall outside the scope of the CDA. Opp. at 27. *See* Def.'s Combined Mem. of Points & Authorities in Supp. of Mots. to Dismiss at 12–14. But semantics cannot overcome the broad immunity afforded by the CDA. As plaintiffs themselves allege, Facebook offers "*communications* services." *Force* Am. Compl. ¶¶ 95, 97. It is "in the business of making [its] facilities available to disseminate the writings composed, the speeches made, and the information gathered by others." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 332

---

[1] Plaintiffs also contend that the ATA "tacit[ly] limited" the CDA because "the ATA was enacted later and amended (most recently via JASTA a few months ago)." Opp. at 27 n.6. But the ATA was enacted in 1992, *see* Anti-Terrorism Act of 1992, Pub. L. No. 102-572, title X, § 1003(a)(4), Oct. 29, 1992, 106 Stat. 4522 (codified at 18 U.S.C. § 2333), four years *before* the CDA, *see* Pub. L. No. 104-104, title V, § 509, Feb. 8, 1996, 110 Stat. 137 (codified at 47 U.S.C. § 230). And although Congress recently created secondary liability for the ATA, nothing in that legislation indicated an intent to disturb the CDA. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007) ("We will not infer a statutory repeal unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary … in order that the words of the later statute shall have any meaning at all." (internal quotation marks and alterations omitted)); *see also Hui v. Castaneda*, 559 U.S. 799, 810 (2010) (refusing to imply a repeal of a comprehensive statutory immunity without "clear and manifest" evidence of such intent).

[2] Plaintiffs do not make this argument with respect to their claims under Israeli law. Opp. at 26.

(4th Cir. 1997) (quoting Keeton et al., *Prosser and Keeton on the Law of Torts*, §113, at 803 (5th ed. 1984)).  Thus, however artfully plaintiffs now try to describe them, plaintiffs' allegations about Facebook's "services" all stem from HAMAS's alleged use of those services to *post objectionable content*.  Indeed, the amended complaint is filled with examples of this alleged objectionable content.  *See Force* Am. Compl. ¶ 3; ¶¶ 100–155.  Holding Facebook liable for such use would fall squarely within the CDA's prohibition on "treat[ing] [Facebook] as the publisher" of that third-party content.  47 U.S.C. § 230(c)(1).  As plaintiffs do not allege that Facebook played any role in the creation or development of that content, the CDA prohibits the suit.  *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 27 (2d Cir. 2015).

Plaintiffs also cannot escape the CDA by alleging that Facebook has the "tools, and can develop additional tools as well by which it can identify, flag, review, and remove HAMAS Facebook accounts."  *Force* Am. Compl. ¶ 544.  As numerous circuit court decisions make clear, the CDA bars challenges to "features that are part and parcel of the overall design and operation of the website" just as surely as it bars challenges to the treatment of particular postings.  *See Jane Doe No. 1*, 817 F.3d at 21; *see also Green v. Am. Online (AOL)*, 318 F.3d 465, 470 (3d Cir. 2003) ("The only question then, is whether holding AOL liable for its alleged negligent failure to properly police its network for content transmitted by its users … would 'treat' AOL 'as the publisher or speaker' of that content.  We agree with the District Court that it would.").  Such decisions "reflect choices about what content can appear on the website and in what form, [and] are editorial choices that fall within the purview of traditional publisher functions."  *Jane Doe No. 1*, 817 F.3d at 21.

The district court in *Fields v. Twitter, Inc.*, No. 16-CV-00213-WHO, 2016 WL 6822065 (N.D. Cal. Nov. 18, 2016), recently rejected (for a second time) this same "services" theory in

relation to the CDA.  After affording plaintiffs an opportunity to amend, the court concluded that "no amount of careful pleading" could save plaintiffs' claims from dismissal.  *Id.* at *1.  The *Fields* plaintiffs' theory that "Twitter provided ISIS with material support by allowing ISIS members to sign up for accounts, not by allowing them to publish content," was still, in substance, an attempt to hold Twitter liable for ISIS content on the platform.  *Id.*  The court explained that "Twitter's decisions to structure and operate itself as a platform … allow[ing] for the freedom of expression [of] hundreds of millions of people around the world, and, through its hands-off policy, allowing ISIS to obtain dozens of accounts on its social network, reflect choices about what [third-party] content can appear on [Twitter] and in what form."  *Id.* at *6 (internal quotation marks omitted).  Where such choices form the basis of a complaint, dismissal under the CDA is required.  *See id.*

Moreover, the *Fields* amended complaint—like the *Force* amended complaint—"still focuse[d] on ISIS's objectionable *use* of Twitter and Twitter's failure to prevent ISIS from using the site, not its failure to prevent ISIS from obtaining accounts."  *Id.* at *7.  That was "no surprise," as "their claims [we]re inherently tied up with ISIS's objectionable use of Twitter, not its mere acquisition of accounts."  *Id.*  The gravamen of the *Fields* amended complaint was "not that Twitter provides material support to ISIS by providing it with Twitter accounts, but that Twitter d[id] so by allowing ISIS to use Twitter 'to send its propaganda and messaging out to the world and to draw in people vulnerable to radicalization.'"  *Id.* (quoting second amended complaint).  The same is true here.  The gravamen of the *Force* amended complaint is not that Facebook provides material support to HAMAS by providing accounts or "services," but that Facebook does so by allowing HAMAS to send its propaganda and messaging out to the world. *See, e.g.*, *Force* Am. Compl. ¶ 110.  That theory is barred by the plain language of § 230(c)(1).

None of the supposed "factual[] distinct[ions]" between this case and *Fields* warrants a different application of the CDA. *Contra* Opp. at 29. It is wholly irrelevant to the CDA analysis whether the attack in *Fields* was accomplished by one or more attackers and whether the attackers actually used Twitter. *See id.* The question for the CDA analysis is whether the claims alleged would require the court to treat the defendant "as the publisher or speaker" of third-party content. 47 U.S.C. § 230(c)(1). If so, then the CDA bars the suit. *See Ricci*, 781 F.3d at 27 ("[I]f GoDaddy is being sued in its capacity as a provider of an 'interactive computer service,' it is immune from defamation liability under the Communications Decency Act.").

Unable to distinguish *Fields*, the *Force* plaintiffs resort to asserting, *ipse dixit*, that "*Fields* was plainly wrongly decided and an outlier." Opp. at 29.[3] Yet plaintiffs identify no decision that reaches the opposite conclusion. *See id.* Indeed, in their entire opposition, plaintiffs cite only one CDA case besides *Fields*, *id.* at 26, and that decision recognized that "state and federal courts around the country have 'generally interpreted Section 230 immunity broadly, so as to effectuate Congress's 'policy choice … not to deter harmful online speech through the … route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages.'" *Shiamili v. Real Estate Grp. of N.Y., Inc.*, 952 N.E.2d 1011, 1016 (N.Y. 2011) (quoting *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007)). It is plaintiffs' crabbed view of the CDA that is the outlier, not *Fields*.

### C.   The CDA Applies to Israeli Law Claims Brought in American Courts.

In a final bid to evade the CDA, plaintiffs assert that the CDA "does not have extraterritorial application, and does not provide immunity to Facebook for its activities abroad, particularly as to plaintiffs' claims under Israeli law." Opp. at 31. But this case does not

---

[3] Plaintiffs address only the first decision in *Fields v. Twitter, Inc.*, No. 16-CV-00213-WHO, 2016 WL 4205687 (N.D. Cal. Aug. 10, 2016) ("*Fields I*"), even though the second was decided before they served their opposition.

implicate extraterritoriality issues because it involves an entirely *domestic* application of U.S. law. Plaintiffs have asked this Court to treat Facebook—a U.S. company, facing claims in a U.S. court—"as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and only a *domestic* application of the CDA is required to dismiss their claims. Under the Supreme Court's clear precedent, the "focus" of the CDA is to provide immunity to Internet service providers, and doing so in this case is an entirely domestic exercise. *See Morrison* v. *National Australia Bank Ltd.*, 561 U. S. 247, 255, 266 (2010).

Plaintiffs offer no contrary authority or argument. As Facebook explained in its opening brief, both the Ninth and D.C. Circuits have applied the CDA to claims involving content posted abroad. *Klayman v. Zuckerberg*, 753 F.3d 1354, 1356–57 (D.C. Cir. 2014); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1120–21 (9th Cir. 2003). And Plaintiffs cite *no* precedents refusing to apply the CDA to foreign-law claims—an application that would, perversely, prevent courts from adjudicating federal and state claims but *requires* them to adjudicate foreign-law claims arising out of the same conduct. Plaintiffs' silence is telling.

## II.   This Court Cannot Exercise Personal Jurisdiction over Facebook.

Plaintiffs also have not met their burden to make a *prima facie* showing of jurisdiction over Facebook. None of their claims arises out of Facebook's limited activities in New York, and plaintiffs' "consent" theory cannot be reconciled with due-process requirements.

### A.   New York's Long-Arm Statute Does Not Permit Exercise of Specific Jurisdiction over Facebook in These Cases.

Plaintiffs cursorily contend that "Facebook's transact[ion] of any business within the state" and "tortious act within the state" support jurisdiction under New York's long-arm statute. Opp. at 38. But they again fail to connect their claims to any conduct in New York. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 249–50 (2d Cir. 2007) (requiring "some articulable

nexus between the business transacted and the cause of action sued upon"); *Barrett v. Tema Dev. (1988), Inc.*, 251 F. App'x 698 (2d Cir. 2007) (no long-arm jurisdiction "because, whether or not [the defendant] 'transacted business' in New York, [plaintiff's] claims do not arise out of any New York transactions."). Plaintiffs do not (and cannot) contend that Facebook's employees in New York were involved in registering or deactivating any of the accounts at issue or reviewing any reports of objectionable content cited here. Plaintiffs have thus failed to allege any statutory basis for specific jurisdiction. *See Best Van Lines, Inc.*, 490 F.3d at 254–55 (allegations about the "donation section of the Website" were "essentially unrelated to the publication of defamatory comments on the Website" at issue in this lawsuit).

## B. Subjecting Facebook to Jurisdiction Here Would Violate Due Process.

Even if plaintiffs had identified a *statutory* basis for jurisdiction, such jurisdiction could not be exercised consistent with the Constitution. Plaintiffs do not contend that these actions arise out of any supposed "minimum contacts" Facebook has with New York, *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014), arguing instead that Facebook is subject to general jurisdiction in New York because it "maintains a substantial presence here and conducts extensive business activities here." Opp. at 39. That theory is foreclosed by *Daimler*, however, which makes clear that such activities are not the "exceptional case" in which general jurisdiction exists outside a corporation's principal place of business or place of incorporation. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.14 (2014). The "exceptional case" is one like *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952), in which a Philippines company had ceased operations during World War II and had made Ohio its "principal, if temporary, place of business." *Daimler*, 134 S. Ct. at 756. Facebook's limited New York activities do not approach this level. *See* Mot. to Dismiss, Ex. A, Decl. of Jeannie Farren ¶ 6 ("[L]ess than 5% of Facebook's total employees[] work in Facebook's New York office").

7

### C.    Facebook Did Not Consent to Personal Jurisdiction in New York.

Plaintiffs also contend that Facebook "consented to general personal jurisdiction in New York when it registered to do business" here, Opp. at 37, but that argument would "risk unravelling the jurisdictional structure envisioned in *Daimler* and *Goodyear*," *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 634 (2d Cir. 2016), and raise additional problems under the Commerce Clause, *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 142 & n.108 (Del. 2016). Plaintiffs' attempt to invoke New York's business registration statutes in this manner is inconsistent with *Brown*[4] and with normal deference to state laws. *See Brown*, 814 F.3d at 634; *see also Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score."). Indeed, that the New York Legislature is currently considering a bill to provide expressly for general jurisdiction upon business registration, Opp. at 38, confirms that the existing statutes do not do so.

### D.    The ATA's Venue Statute Does Not Justify the Exercise of Personal Jurisdiction in the *Force* Case.

Unable to show any traditional basis for personal jurisdiction, the *Force* plaintiffs rely on the ATA's service-of-process provision, Opp. at 7–8, but that provision does not waive personal jurisdiction. While it is true that several courts have interpreted it as affording a statutory basis for nationwide personal jurisdiction,[5] those cases do not grapple with the statutory language. Section 2334(a) is titled a "General *Venue*" provision, and it makes no mention of *personal*

---

[4] Plaintiffs assert that "[e]ven after *Goodyear* and *Daimler*, New York courts have held that registration in New York as a foreign corporation constitutes consent to personal jurisdiction for purposes of CPLR § 301," Opp. at 37 & n.13, but they have not identified any New York Court of Appeals case to have done so, and that is what matters under *Brown*. 814 F.3d at 634.

[5] *See, e.g.*, *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 283–84 (E.D.N.Y. 2016); *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 26 (E.D.N.Y. 2016); *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 806 (S.D.N.Y. 2005).

*jurisdiction*, even though other subsections of the same statute refer to "jurisdiction." *Compare* § 2334(a) *with* §§ 2334(b), (d). In light of the provision's focus only on "venue," it is difficult to read § 2334(a) to authorize the service of a summons to "establish[] personal jurisdiction over a defendant." Fed. R. Civ. P. 4(k)(1)(c). Assuming nevertheless that such provision provides a *statutory* basis for jurisdiction, there are still *constitutional* barriers to hailing Facebook, an American defendant, into court in New York; the cases finding jurisdiction under the ATA to date have involved foreign—not American—defendants. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331–34 (2d Cir. 2016) (Palestinian entities); *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 93 (2d Cir. 2008) (Saudi Arabian princes), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010). That distinction matters, as any American defendant would have very different federalism-backed expectations than a foreign defendant about where in the United States it may be hailed into court. *See In re Terrorist Attacks*, 538 F.3d at 93 (due process generally "mandates that a defendant's 'conduct and connection with the forum State are such that he should reasonably anticipate being [hailed] into court there"). And in any event, even if the *Force* plaintiffs could establish personal jurisdiction for purposes of their ATA claims, that showing would not justify jurisdiction over the remaining claims. *See* Wright & Miller, 4A Fed. Prac. & Proc. Civ. § 1069.7 (4th ed. 2016) (a plaintiff must show personal jurisdiction "over a defendant with respect to each claim she asserts").

## III.   The *Cohen* Plaintiffs Lack Article III Standing to Bring Their Suit.

Much like they do with the CDA, the *Cohen* plaintiffs largely ignore Article III standing. They argue that they have a cognizable injury because "the Israeli statutes at issue were passed to protect the plaintiffs and impose a duty upon Facebook," Opp. at 40, but the Supreme Court has already explained that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to

vindicate that right." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016). And plaintiffs' assertion that their requested injunction "would likely affect the scope, intensity, and frequency of [terrorist] attacks" in Israel, Opp. at 40, is nowhere in their amended complaint and is entirely speculative in any event. *See, e.g.*, *Allco Fin. Ltd. v. Klee*, 805 F.3d 89, 98 (2d Cir. 2015), *as amended* (Dec. 1, 2015) (concluding that invalidation of a bid selection would "fail to redress Allco's injuries, as they [would] not make it 'likely, as opposed to merely speculative,' that Allco [would] eventually receive a Section 6 contract").[6] Plaintiffs' alleged injury is caused by terrorists, not Facebook.[7]

This Court's decision in *Greenberg v. Bush*, 150 F. Supp. 2d 447 (E.D.N.Y. 2001), highlights the point. There, plaintiffs attempted to sue the Executive Branch for its alleged support for Palestinian terrorist organizations. *Id.* at 450, 455. The Court commented: "It would be difficult to imagine a clearer example of a third party's actions breaking the causal chain. The gunshots and other violence complained of are fairly traceable to neither Defendants' foreign policy decisions nor actions taken in accordance with those decisions." *Id.* at 455. As in *Greenberg*, the *Cohen* plaintiffs have not alleged facts from which it could be reasonably inferred that, absent Defendants' acts, "there is a substantial probability that Plaintiffs would not have been shot at by a third party," nor that "if the court affords the relief requested, the asserted violent actions directed at the Plaintiffs will cease." *Id.* Rather, plaintiffs seek "relief that no

---

[6] This is also not a case involving *parens patriae* standing, under which standing requirements may not apply as strictly. *See Massachusetts v. E.P.A.*, 549 U.S. 497, 516-18 (2007).

[7] The *Cohen* complaint is easily distinguished from *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), where the plaintiffs were victims of HAMAS terrorist attacks and alleged that the defendant had transferred millions of dollars to Iran knowing that Iran was funneling money to Hamas "conditioned … on agreement by [Hamas] to conduct terrorist attacks on Israel and its residents," *id.* at 92–93.

10

more directly and tangibly benefits them than the public at large" and therefore "fail to state an Article III case or controversy." *Id.* (internal quotation marks omitted).

IV.    **The *Force* Plaintiffs Have Failed to State A Claim Under Section 2333.**

Finally, in addition to all of the other pleading deficiencies in the complaints, the *Force* plaintiffs have failed to state a claim under the ATA.

A.    **Plaintiffs Have Not Plausibly Alleged That Their Injuries Occurred "By Reason Of" Facebook's Activities.**

To begin, plaintiffs cannot show that any of Facebook's alleged conduct is the proximate cause of their injuries. "[T]o say that one event was a proximate cause of another means that it was not just any cause, but one with a sufficient connection to the result." *Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014). It "is more restrictive than a requirement of factual cause alone." *Id.* at 1720. Here, plaintiffs do not allege that access to Facebook was a but-for cause of the attack, much less that Facebook's conduct was "a substantial factor in the sequence of responsible causation" leading to these particular attacks. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003). Plaintiffs do not, for example, allege that any of the attacks in any way required the existence of Facebook to be carried out. Instead, plaintiffs allege only that access to Facebook "strengthens HAMAS internally as an organization" and makes terrorist "attacks more likely," Op. at 18, allegations that are far too general to establish proximate cause. *See, e.g.*, *Fields*, 2016 WL 6822065, at *9 (no proximate cause even though plaintiffs alleged that "Twitter provided ISIS with material support in the form of a powerful communication tool"); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542 (E.D.N.Y. 2012) ("No single or total transfer [of money] highlighted by plaintiff establishes the requisite magnitude and temporal connection to the attack required to find that the Bank's actions proximately caused plaintiff's injuries.").

### B.     Plaintiffs Have Not Plausibly Alleged Secondary Liability Under the ATA.

Plaintiffs overreach when they argue that Facebook aided and abetted or conspired with HAMAS.  Opp. at 22–24.  JASTA creates liability only for those who "aid[] and abet[], by knowingly providing substantial assistance, or who conspire[] with *the person who committed such an act of international terrorism*," not merely the organization that allegedly planned it or took credit for it.  *See* JASTA § 4 (emphasis added).  Here, that would be the individual perpetrators of the attacks, and plaintiffs make no such allegations.  But even if JASTA liability were broader, plaintiffs' allegations about HAMAS would be insufficient.

### 1.     Facebook Did Not Aid and Abet HAMAS.

Plaintiffs' aiding and abetting claim fails for at least two reasons.  *First,* plaintiffs cannot establish substantial assistance to HAMAS under the *Halberstam* factors.  Plaintiffs do not contend—nor could they—that Facebook's provision of services is "essential" to HAMAS's activities.  *See Halberstam v. Welch*, 705 F.2d 472, 488 (D.C. Cir. 1983).  HAMAS operated for years before the Internet or Facebook was ever created, *Force* Am. Compl. ¶¶ 26, 517–18, and such services are not integral to its terrorist enterprise.  They are not like the "aid in transforming large quantities of stolen goods into 'legitimate' wealth" in *Halberstam*, nor like the sale of the photo used for a defamatory activity in *Russell v. Marboro Books*, 18 Misc. 2d 166 (N.Y. Sup. Ct. 1959).  *See Halberstam*, 705 F.2d at 484, 488.  Plaintiffs also do not contend—nor could they—that Facebook was present at HAMAS's terrorist attacks or is in any special relationship with HAMAS.  *See* Opp. at 23.  And although plaintiffs may disagree with the way Facebook chooses to address reports of objectionable content on its platform, they cannot seriously contend that Facebook is "one in spirit" with HAMAS, *Halberstam*, 705 F.2d at 484.  Plaintiffs thus cannot show substantial assistance.

12

*Second*, plaintiffs have not adequately alleged that Facebook *knowingly* provided any such assistance to HAMAS.  Plaintiffs contend that "Facebook at the very least 'had a general awareness' of its role in Hamas's terrorist activities through Hamas's use of Facebook's platform and services" over time.  Opp. at 21.  But aiding and abetting liability requires more: "the defendant must be generally aware of his role as part of an overall illegal or tortious activity *at the time that he provides the assistance*."  705 F.2d at 477.  Plaintiffs have not and cannot allege such knowledge here: Facebook does not require proof of identification when users sign up for its services, *see* Force Am. Compl. ¶¶ 96–97, 547, and there is nothing illegal or tortious about offering a social-networking platform to the public under such terms.  Plaintiffs cannot rely on after-the-fact reports of alleged HAMAS content to establish the requisite knowledge.

### 2.    Facebook Did Not Conspire with HAMAS.

In defense of their conspiracy claim, plaintiffs make only two arguments.  *First*, they contend that their pleading is sufficient because they "alleged very clearly that 'Facebook conspired with HAMAS,'" Opp. at 24, but "a bare assertion of conspiracy will not suffice" to state a plausible claim to relief, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).  *Second*, they contend that Facebook's supposed "pattern of turning a blind eye" amounts to "evidence of Facebook's tacit agreement to provide services and resources to Hamas."  Opp. at 26.  But even assuming that Facebook turned a "blind eye"—which it did not—that would not be sufficient to establish an *agreement*, which is what plaintiffs must allege to prove a conspiracy.  *See King v. City of N.Y.*, No. 05 CV 3247 (JG), 2007 WL 959696 (E.D.N.Y. Mar. 30, 2007).  Plaintiffs' threadbare allegations do not state a plausible claim that Facebook somehow

13

"conspired" with terrorists to advance their aims.  *See Twombly*, 550 U.S. at 566; *Halberstam*, 705 F.2d at 481.[8]

### C.     Plaintiffs Also Have Not Plausibly Alleged Direct Liability for an "Act of International Terrorism."

Finally, plaintiffs' arguments in favor of direct liability only confirm the absence of such liability.  They assert that their allegations of scienter should be judged according to a "lenient standard" and deemed sufficient under *Ahmad v. Christian Friends of Israeli Communities*, No. 13 CIV. 3376 JMF, 2014 WL 1796322 (S.D.N.Y. May 5, 2014).  Opp. at 14.  But, as *Ahmad* makes clear, the ATA requires that the defendant know both where the services are going and of the possibility that those services "would be used in preparation for, or in carrying out, violations of certain federal criminal statutes."  *Ahmad*, 2014 WL 1796322, at *3; *see also Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 211–12 (2d Cir. 2014) (triable issue of fact where defendant *knew* it was providing money to a Specially Designated Global Terrorist organization).  Here, plaintiffs have not alleged that Facebook knew it was providing services to HAMAS to engage in terrorist activities.  *Force* Am. Compl. ¶¶ 554.  If scienter could be established by the allegations here, then almost any company offering services to the public could be liable for material support for terrorism.  That cannot be correct.

### CONCLUSION

For these reasons and those set forth in Facebook's Combined Memorandum of Points and Authorities in Support of Motions to Dismiss, the Court should dismiss the amended complaints.

---

[8] These allegations are also far removed from those in *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005).  There, the defendants allegedly furnished a "universal death and dismemberment plan" to families of Palestinian terrorists killed in service of the Intifada, conduct that could have no lawful, independent explanation.  *See id.* at 577, 584; *see also Linde v. Arab Bank, PLC*, Nos. 16-2119, 16-2134, 16-2098 (2d Cir. Oct. 21, 2016) (appeal pending of subsequent judgment).

Dated:  January 13, 2017

Respectfully submitted,

By: _____

Shireen A. Barday
Aulden Burcher-DuPont
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
shireen.barday@kirkland.com

Craig S. Primis, P.C.
K. Winn Allen
Jennifer M. Bandy
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
craig.primis@kirkland.com

*Attorneys for Defendant*