UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
STUART FORCE, *et al.*,                                                                    16-cv-05158 (NGG) (lb)

                      Plaintiffs,

                                                                                                                   **SUPPLEMENT TO MOTION**

                -against-

FACEBOOK, INC.,

                      Defendant.
------------------------------------------------------------------------X

       On August 5, 2018, plaintiffs moved under Fed. R. Civ. P. 60(b) asking this Court to vacate its judgment and prior opinions on the ground that new significant evidence, not previously available, disproves much of the factual premise on which the prior judgment and orders were based. (DE 71 & DE 72). Plaintiffs requested an opportunity to conduct discovery for the purpose of determining whether 47 U.S.C. § 230 is applicable in this case. *Id.*

       Plaintiffs now supplement that motion with an additional new document, first published on Friday, August 17, 2018 and first brought to the attention of plaintiffs' counsel on August 20, 2018. On that date, the United States government filed a Statement of Interest in a different case against Facebook, *National Fair Housing Alliance v. Facebook*, No. 18-cv-2689, pending before Judge Koeltl of the United States District Court for the Southern District of New York. Therein, the government takes the position that by "creat[ing] and harvest[ing] user data to develop profiles for each user, categorizing them into groups based on demographics, interests, behaviors, and other criteria," Facebook renders itself an "information content provider" (*see* 47 U.S.C. § 230(c)(1) and (f)(3)), thus defeating the immunity offered by § 230(c)(1). *National Fair Housing Alliance*, No. 18-cv-2689, Statement of Interest of United States of America, DE 48 at 2 (S.D.N.Y. Aug. 17, 2018) ("*NFHA* Gov't SOI") (Ex. 1). More precisely, the government argues that each of the following acts by Facebook constitutes the "creation or development of information," as that term is used by § 230(f)(3):

- "[S]eiz[ing]" "content posted by its users...to actively classify its users into categories." *NFHA* Gov't SOI at 17-18.

- Compelling Facebook's users to allow Facebook, as a condition on use of Facebook's services, "to view, collect, and mine their personal data." *NFHA* Gov't SOI at 18-19.

- Using and collating user data for the purpose of displaying it in violation of another statute. *NFHA* Gov't SOI at 20.

- Grouping users in accord with certain characteristics to facilitate someone else's violation of another statute. *NFHA* Gov't SOI at 20-21.

- Inviting or soliciting someone else to use its platform to violate another statute. *NFHA* Gov't SOI at 21-22.

- Creating tools designed to facilitate the violation of another statute. *NFHA* Gov't SOI at 22-23.

- Using its algorithms to selectively deliver or withhold content produced by someone else in violation of another statute. *NFHA* Gov't SOI at 23-24.

Plaintiffs here similarly allege that Facebook seizes user data, often without knowledge of the user and as an adhesive condition of using its platform, and uses that data to classify its users and display what it learns to others to facilitate the material support of terrorism, a federal crime. Plaintiffs likewise allege that Facebook's algorithms identify terrorists and bring them together, thereby facilitating their terrorist activities. Facebook encourages terrorists to post information about themselves on Facebook and spend as much time as possible using Facebook because increased usage means increased advertising revenue for Facebook. Facebook indeed uses its algorithms to selectively deliver or withhold terrorist content from other users on the basis of Facebook's determination that the other user is or is not likely to enjoy receiving that content. Facebook created the tools that make all this possible. Thus, accepting as true all of the allegations

in the First Amended Complaint (FAC) (DE 28) and all reasonable inferences that flow therefrom, it appears to be the government's position that Facebook should not have been entitled to immunity under § 230 in this case.[1]

Moreover, the government's Statement of Interest is at odds with this Court's prior opinions in two fundamental respects. First, this Court held, relying on footnoted dicta by a district court in a different circuit, that the "manipulation of information provided by third parties" does not render Facebook an "information content provider[.]" (DE 48 at 19). The government clearly disagrees. *NFHA* Gov't SOI at 17-24. Second, this Court held that plaintiffs' claims necessarily treat Facebook "as the publisher or speaker" of Hamas' content because the decision whether to permit a post to remain on Facebook or to remove it falls within "the editorial prerogative" and thus plaintiffs' claims assert liability related to Facebook's publishing duties. (DE 48 at 18-22). The same can certainly be said of much of the offending material at issue in *National Fair Housing Alliance*. In both cases, plaintiffs allege that Facebook solicits material, analyzes it, and selectively reproduces it for particular audiences.[2] By this Court's rationale, it is very difficult to understand

---

[1] The government's Statement of Interest cites one of this Court's prior decisions, stating that this Court "rejected efforts to hold Facebook liable merely for allowing terrorist organizations to use the site." *NFHA* Gov't SOI at 16. But that is merely the government's characterization of the Court's opinion, and does not indicate that the government considered the actual allegations of the FAC which, plaintiffs submit, would have led the government to conclude that *National Fair Housing Alliance v. Facebook* is not actually very different from this case.

[2] Plaintiffs do not mean to imply that the two cases are identical in every respect. There are important differences. For example, there is no contention in *National Fair Housing Alliance* that Facebook should be liable for permitting the discriminating advertisers to have mere access to Facebook's platform. Rather, Facebook's alleged liability in that case arises only from the manner in which Facebook allows the advertisers to use the platform and they manner in which Facebook uses information mined from its other users. Here, plaintiffs assert Facebook's liability for giving Hamas mere access to its resources. But plaintiffs *also* allege that the manner in which Facebook allows Hamas to use the platform and they manner in which Facebook uses information mined

-3-

why Facebook would not be immune in *National Fair Housing Alliance*. The government clearly understands immunity under § 230 differently than this Court does. The Court is obviously not bound to accept the government's views. However, plaintiffs respectfully submit that the Court may wish to consider the fact that the government has now expressed its views and adopted a position that differs from the Court's.

Finally, the government's discussion of Facebook's activities, its motives, and the manner in which it obtains and uses user data is enlightening. *NFHA* Gov't SOI at 3-8. It is entirely consistent with much of what the plaintiffs have been arguing. Moreover, the government, which has access to far more information than plaintiffs do, offers additional details and renders plaintiffs' allegations all the more plausible.

For all of these reasons, plaintiffs respectfully submit that the government's Statement of Interest further supports plaintiffs' arguments on this motion that the premises underlying the Court's prior conclusions need further consideration, following discovery.

Dated:   Brooklyn, New York
         August 29, 2018

                                               Respectfully submitted,

                                               THE BERKMAN LAW OFFICE, LLC
                                               *Attorneys for the Plaintiffs*

                                               by: _____
                                                   Robert J. Tolchin

                                               111 Livingston Street, Suite 1928
                                               Brooklyn, New York 11201
                                               718-855-3627

cc:   All counsel of record via ECF

---

from its other users to assist Hamas's illegal activities is grounds for liability. As to those aspects of this case, it and *National Fair Housing Alliance* are on all fours.